|  |  |  |
|---|---|---|
| 1 |  |  |
| 2 |  |  |
| 3 |  |  |
| 4 |  |  |
| 5 |  |  |
| 6 |  |  |
| 7 |  |  |
| 8 | UNITED STATES DISTRICT COURT |  |
| 9 | WESTERN DISTRICT OF WASHINGTON AT TACOMA |  |
| 10 | KRISTAL MATTHEWS, |  |
| 11 | Plaintiff, | CASE NO. 3:15-cv-05311 JRC |
| 12 | v. | ORDER ON PLAINTIFF'S COMPLAINT |
| 13 | CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, |  |
| 14 |  |  |
| 15 | Defendant. |  |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States Magistrate Judge, Dkt. 6). Plaintiff has filed an opening brief, and defendant has filed a response (*see* Dkt. 13, 17).

After considering and reviewing the record, the Court concludes that the ALJ did not commit any harmful error in the evaluation of plaintiff's disability applications.

ORDER ON PLAINTIFF'S COMPLAINT - 1

Although plaintiff contends that the ALJ erred in failing to credit fully a medical opinion, even if that opinion is credited, plaintiff still could have performed other work in the national economy; therefore, any error is harmless. In addition, although plaintiff contends that the ALJ erred by failing to find her alleged degenerative disc disease to be a severe impairment and by failing to discuss this impairment, plaintiff has not cited any diagnosis of this impairment or to any opinion from an acceptable medical source that she suffered from any functional limitations as a result of this impairment. Finally, the number of jobs identified at step five that plaintiff could perform is a significant number.

Therefore, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff, KRISTAL MATTHEWS, was born in 1976 and was 31 years old on the amended alleged date of disability onset of March 15, 2007 (*see* AR. 28, 62, 259-62, 263-69). Plaintiff graduated from high school (AR. 58, 1244). Plaintiff has past work experience as a cashier and deli worker (AR. 1244-45). Plaintiff quit her last employment because of pain (AR. 60-62).

According to the ALJ, plaintiff has at least the severe impairments of "obesity, irritable bowel syndrome (IBS), kidney stones, status post ankle fracture in 2013, affective depressive disorder, and personality disorder (20 CFR 404.1520(c) and 416.920(c))" (AR. 1274).

At the time of the earlier hearing, plaintiff was living with her mother (AR. 63).

## PROCEDURAL HISTORY

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* AR. 143-46, 147-50, 155-56, 157-58). Following a remand for further proceedings from this Court (AR. 1300-10), plaintiff's hearing and supplemental hearing were held before Administrative Law Judge M.J. Adams ("the ALJ") on June 11, 2014 (*see* AR. 1234-40) and January 6, 2015 (AR. 1241-68). On February 17, 2015, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 1203-33).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ failed to give legally sufficient reasons for rejecting the opinion of Dr. Marc Suffis, M.D.; (2) Whether or not the ALJ erred in evaluating plaintiff's degenerative disc disease at Step Two; and (3) Whether or not the errors in the ALJ's decision are harmful and warrant remand for further proceedings or for payment of benefits (*see* Dkt. 13, p. 1-2).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**(1) Whether or not the ALJ failed to give legally sufficient reasons for rejecting the opinion of Dr. Marc Suffis, M.D.**

Plaintiff contends that the ALJ erred when failing to credit fully all of the opinions from examining physician, Dr. Mark Suffis, M.D. Defendant contends that there is no error, and even if there is, any error is harmless.

The ALJ gave "little weight to [Dr. Mark Suffis'] suggestions the claimant can stand and walk for 30 minutes continuously for four hours in a work day, that she has limitations in the use of her hands for reaching, pushing, pulling, operating foot controls, and limitations in postural activities" (AR. 1216 (*citing* AR. 1155-57)). The ALJ supported this assignment of "little weight" with a finding that these "limitations are inconsistent with the minimal and mild examination findings, including those of Dr. Suffis as described above" (AR. 1216). The ALJ also provided a specific example, finding that although Dr. Suffis "suggests significant limitation in the claimant's ability to reach, his own examination did not demonstrate any related difficulties" (AR. 1216 (*citing* 1763-64)).

Regarding reaching limitations, defendant notes that "on examination, plaintiff's upper extremities were symmetrical with motor strength of 5/5; deep tendon reflexes in the arms were brisk and also symmetrical;" and, the only adverse exam finding regarding plaintiff's arms is that Dr. Suffis noted mild diffuse tenderness of plaintiff's upper extremities (Dkt. 17, p. 3 (*citing* AR. 1764) (internal citations omitted)). Defendant accurately describes the examination results of Dr. Suffis (*see* AR. 1764). Therefore, the

Court concludes that the finding by the ALJ that although Dr. Suffis "suggests significant limitation in the claimant's ability to reach, his own examination did not demonstrate any related difficulties" is a finding supported by substantial evidence in the record as a whole (AR. 1216 (*citing* 1763-64)). The Court finds no error in the ALJ's rejection of the opinion of Dr. Suffis regarding reaching limitations.

Although defendant contends that insufficient objective findings support the other opinions from Dr. Suffis, Dr. Suffis observed mild crepitus in the right ankle, as well as complaints of pain (*see* AR. 1764). He also diagnosed plaintiff with "status post fracture, right ankle, suspect lateral instability" (*see id*.). Crepitus is defined as "the grating sound of two ends of a broken bone rubbing together," http://dictionary.reference.com/browse/crepitus (last visited January 25, 2016) and "the creaking or grinding noise heard over an injured or damaged joint," http://medical-dictionary.thefreedictionary.com/crepitus (last visited January 26, 2016). Combined with the claimant's obesity (*see* AR. 1209), these findings regarding lateral instability in plaintiff's right ankle along with her pain and crepitus appear to provide support for the opinions of Dr. Suffis regarding limitations on plaintiff's continuous standing or walking; operating foot controls; and postural limitations, such as climbing (AR. 1755-56, 1764). However, plaintiff failed to file a reply in opposition to defendant's argument that any error by the ALJ with respect to these opinions of Dr. Suffis is harmless error.

Even if the Court were to conclude that the ALJ's rejection of some of the opinions of Dr. Suffis is an error, the Court concludes that any error in this regard is harmless error.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (*citing Stout,* 454 F.3d at 1055-56). Courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

Although the ALJ rejected numerous opinions of Dr. Suffis, as noted by the ALJ, "as indicated below the vocational expert ["VE"] identified several different jobs an individual with the above limitations could perform at the sedentary level; thus, even if Dr. Suffis' opinion were given greater weight, there is other work the claimant could perform at the sedentary level" (AR. 1216). As noted by the ALJ, during the VE's testimony, the VE "further testified that a hypothetical individual of the claimant's age, education, and experience with the above limitations but further limited to the full range of sedentary work would be able to perform the jobs of table worker (DOT [The Dictionary of Occupational Titles ] #739.687-182) , . . . . Touchup screener, printed circuit board assembly (DOT #726.684-110), . . . . and taper, printed circuit layout

(DOT #017.684-010)," with a combined 33,000 jobs in the national economy and 400 jobs in Washington state. (AR. 1219). As these jobs are sedentary, any error by the ALJ regarding the opinion of Dr. Suffis with respect to plaintiff's limitations on continuous standing or walking would be "'inconsequential to the ultimate nondisability determination.'" *Marsh*, *supra,* 792 F.3d at 1173 (*citing Stout*, *supra,* 454 F.3d at 1055-56).

As noted by defendant, regarding the opinion of Dr. Suffis with respect to pushing and pulling, "even light work involves only '*some* pushing and pulling of arm or leg controls,'" and if a person can perform light work, she also can perform sedentary work (Dkt. 17, p. 5 (*quoting* 20 C. F. R. §§ 404. 1567 (b), 416. 967 (b)) (emphasis provided by defendant). As Dr. Suffis opined that plaintiff occasionally could push and pull, and occasionally could operate foot controls, any error by the ALJ in failing to credit fully these opinions likewise is harmless error. Even when these opinions are credited, plaintiff still could perform the other work identified by the ALJ in his written decision (AR. 1756).

Finally, the Court also finds persuasive defendant's argument that "to the extent the ALJ's [residual functional capacity] finding erroneously omitted [plaintiff's] postural limitations . . . . any error was harmless since sedentary jobs require infrequent stooping, balancing, crouching, or climbing" (Dkt. 17, p.5 (*quoting Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)). For example, table worker, DOT #739.687-182, does not "require any climbing, balancing, stooping, kneeling, crouching, or crawling." *Galvan v. Colvin*, 2014 U.S. Dist. LEXIS 2781 at *15 Case No. 13-711-OP

(C.D. Cal 2014) (*citing* The Dictionary of Occupational Titles ("DOT")) (unpublished opinion); *see also* The Selected Characteristics of Occupations defined in the Revised Dictionary of Occupational Titles ("SCO"), published by the Department of Labor, p. 203. Similarly, the job of touchup screener, printed circuit board assembly (DOT #726.684-110), does not require any climbing, balancing, stooping, kneeling, crouching, or crawling. *See* The SCO, p. 203. Finally, the job of taper, printed circuit layout (DOT #017.684-010) also does not require any climbing, balancing, stooping, kneeling, crouching, or crawling. *See id.* at p. 57. Therefore, even if the ALJ had credited fully the opinion of postural limitations by Dr. Suffis, plaintiff still would have been able to perform the identified jobs. Hence, the rejection of these opinions is "'inconsequential to the ultimate nondisability determination.'" *Marsh*, *supra,* 792 F.3d at 1173 (*citing Stout, supra,* 454 F.3d at 1055-56).

For the reasons stated and based on the record as a whole, the Court concludes that any error in the ALJ's failure to credit fully the opinion of Dr. Suffis is harmless. Therefore, any rejection of these opinions is "'inconsequential to the ultimate nondisability determination.'" *Marsh*, *supra,* 792 F.3d at 1173 (*citing Stout, supra,* 454 F.3d at 1055-56). As plaintiff did not file a reply, she did not contest defendant's harmless error argument, and the Court concludes that it is persuasive and supported by the record.

//

//

### (2) Whether or not the ALJ erred in evaluating plaintiff's degenerative disc disease at step two.

Plaintiff contends that the ALJ erred by failing to conclude that plaintiff suffered from the severe impairment of degenerative disc disease ("DDD") at step two of the sequential disability evaluation process. Defendant argues that even if there is an error it is harmless error.

Step-two of the administration's evaluation process requires the ALJ to determine if the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). The step-two analysis is "a *de minimis* screening device to dispose of groundless claims," when the disability evaluation process ends at step two. *Smolen, supra,* 80 F.3d at 1290 (*citing Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)).

The Court notes that plaintiff bears the burden to establish by a preponderance of the evidence the existence of a severe impairment that prevented performance of substantial gainful activity and that this impairment lasted for at least twelve continuous months. 20 C.F.R. §§ 404.1505(a), 404.1512(a) and (c), 416.905(a), 416.912(a) and (c); *Yuckert, supra*, 482 U.S. at 146; *see also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (*citing Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995)).

Defendant contends that although plaintiff argues that DDD was revealed in an MRI of her hip and spine, "this was the interpretation of only one medical source-

plaintiff's treating physician, Martin Iversen, M.D." (Dkt. 17, p.7 (*citing* AR. 1036)). Defendant also notes that despite the fact that Dr. Iversen refers to DDD in his report, "he never actually diagnosed it, [but] instead, under 'assessment,'" he diagnosed 'low back pain'" (*id.* at 10 (*citing* AR. 1033)). Defendant also argues that "the interpreting radiologist's impression was that the MRIs revealed minimal-to-no findings" (*id.* at 7 (*citing* AR. 1045-46)). Defendant contends that any error by the ALJ in failing to discuss DDD is at most harmless error as plaintiff did not have a diagnosis for DDD.

Some courts have found that a diagnosis is required in order to find an impairment, although it is not clear that this always is required by the Social Security Administration. *See, e.g., Sefati v. Colvin*, 2013 U.S. Dist. LEXIS 173252 at *21-*22 (W.D. Wash. 2013) ("the Social Security regulations require a diagnosis from an acceptable medical source to establish the existence of a medically determinable impairment") (citations omitted) (unpublished opinion); *see also Ukolov v. Barnhart,* 420 F.3d 1002, 1006 (9th Cir. 2005) ("Because none of the medical opinions included a finding of impairment, a diagnosis, or objective test results, [the claimant] failed to meet his burden of establishing disability") (citation omitted); *Griemsmann v. Astrue*, 147 Soc. Sec. Rep. Srvc. 286, at *14-*15 (W.D. Wash. 2009). Plaintiff does not dispute the necessity for a diagnosis in order for an ALJ to find that an impairment is severe. Although plaintiff contends that she was diagnosed with DDD, the record does not reveal any such diagnosis on the pages cited by plaintiff (Dkt. 13, p.10 (*citing* AR. 1033)), nor has this Court found any such diagnosis in the record submitted.

Defendant also argues that no acceptable medical source assessed functional limitations resulting specifically from DDD (Dkt. 17, p. 8). Plaintiff does not dispute this characterization of the record. The ALJ's implicit finding that DDD was not a severe impairment is based on substantial evidence in the record as a whole, including the absence of a definitive diagnosis for this impairment and no assessed functional limitations as a result of this impairment.

Defendant argues that any error in the ALJ's failure to discuss plaintiff's alleged DDD is harmless for multiple persuasive reasons (*id.* at 9). First, the record does not demonstrate that DDD was a severe impairment that resulted in specific functional limitations not already accounted for in the residual functional capacity finding. As plaintiff has failed to provide the Court with any support from the record demonstrating any opinion from an acceptable medical source providing an opinion regarding specific functional limitations resulting from DDD, this argument is persuasive.

Defendant also contends that any error is harmless because plaintiff never alleged disability based on back pain or DDD (*id.* at 10 (*citing* 55-56, 65-66, 68-69, 309)). As noted already, plaintiff did not file a reply and hence did not dispute this characterization of the record. The Court also concludes that the record supports this contention. For example, on one of her disability report forms, when asked to name the illnesses, injuries, or conditions that limit her ability to work, plaintiff responded "depression [and] stomach pain" (AR. 309). Similarly, at plaintiff's April 13, 2010 administrative hearing, when asked to describe the location of her pain, plaintiff responded "my sides" (AR. 65). When asked how plaintiff had been treated for her pain she replied: "I've tried stuff for irritable

ORDER ON PLAINTIFF'S COMPLAINT - 11

bowel; I was told it could have been diverticulitis, so I tried, like, not eating nuts and stuff for a while" (AR. 66). Finally, when asked at her hearing what she did to try to relax, plaintiff replied "try to lay down, keep my stomach from - - keep stomach muscles from working too hard, I guess" (AR. 69). The Court also notes that in the June, 2014 report prepared by Dr. Suffis, he indicates that the chief complaint (non-psychiatric) "is stomach pain" (AR. 1760). Based on the record as a whole, the Court concludes that although plaintiff has been diagnosed with back pain, she did not indicate that this was a condition that limited her ability to work (AR. 309), and did not testify at all about her back pain limiting her functionality during her administrative hearing (AR. 65-66, 69). Furthermore, plaintiff has not directed the Court to any evidence in the record that any acceptable medical source assessed functional limitations resulting specifically from DDD.

Defendant also contends that "the ALJ found that plaintiff's obesity was a severe impairment, and functional limitations from obesity often overlap with those of other physical conditions" (*id*. at 11 (*citing* AR. 1209, SSRI 02-1p)). Defendant contends that another reason why any error was harmless error is that plaintiff has not "identified any functional limitations resulting from [DDD] that were not already accounted for by her obesity impairment" (*id*.).

The Court concludes that defendant's arguments are persuasive and supported by the record. Therefore based on a review of the record as a whole, the Court concludes that any error in the ALJ's failure to discuss explicitly plaintiff's DDD is harmless error.

**(3)    Whether or not the ALJ identified at step five three sedentary jobs existing in significant numbers in the national or regional economy that plaintiff could perform.**

If the ALJ reaches the final step in the sequential analysis, the burden shifts to the Commissioner to prove that the claimant can perform other work in the national economy, given her age, education, residual functional capacity ("RFC") and past work experience. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *see also* 20 C.F.R. §§ 404.1520(g), 404.1594(f)(8), 416.994(b)(5)(vii); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). This other work "'which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1560(c)(1).

According to the Ninth Circuit, an ALJ does not err by defining "region" as the state of California, and presumably defining the state of Washington as a region also is appropriate. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 527 (9th Cir. 2014) (*citing* 42 U.S.C. § 1382c(a)(3)(B)). In addition, the Ninth Circuit concluded that 2,500 jobs in California constitutes a significant number of jobs in the region, and 25,000 jobs nationally constitutes work which existed in significant numbers in several regions of the country, although the later was a "close call." *Id.* at 528, 529 (*citing* 42 U.S.C. § 1382c(a)(3)(B) (other citations omitted)).

As noted by the ALJ, during the VE's testimony, the VE "further testified that a hypothetical individual of the claimant's age, education, and experience with the above limitations but further limited to the full range of sedentary work would be able to

perform the jobs of table worker (DOT #739.687-182) , . . . . Touchup screener, printed circuit board assembly (DOT #726. 684-110), . . . . and taper, printed circuit layout (DOT #017.684-010)," with a combined 33,000 jobs in the national economy (AR. 1219). The Court considers the 33,000 jobs in the national economy in light of the fact that it represents jobs across several regions. However, based on the Ninth Circuit precedent already discussed, identifying 33,000 jobs nationally constitutes work which existed in significant numbers in several regions of the country. *See Gutierrez*, *supra,* 740 F.3d at 528 (a combined "25,000 jobs meets the statutory standard"); *id*. at 421 (15,000 jobs nationally as an assembler, and 10,000 jobs nationally as an almond blancher, yielded "25,000 jobs in the nation"); *Evans v. Colvin,* 2014 U.S. Dist. LEXIS 107921 at *1 (C.D. Cal. 2014) (unpublished opinion) (the court affirmed an ALJ decision in which the ALJ had "found that 600 such jobs exist regionally and 6,200 nationally"); *Yepiz v. Colvin,* U.S. Dist. LEXIS 46262 at *26 (C.D. Cal 2013) ("the vocational expert also testified that 15,000 such jobs are available nationally. That number is significant for purposes of the step five determination") (unpublished opinion) (citations omitted); *see also Simcoe v. Colvin*, 2015 U.S. Dist. LEXIS 85714 at *15 ("given that the VE in this case identified several thousand more jobs than in *Gutierrez*, it is reasonable to conclude that 32,000 is a significant number") (S.D. Ind. 2015) (unpublished decision) (citations omitted).

   As at step five an ALJ must identify work that a claimant can perform "which exists in significant numbers *either* in the region where such individual lives or in several regions of the country," the ALJ has met his burden here. *See* 42 U.S.C. § 423(d)(2)(A)

(emphasis added); *see also* 20 C.F.R. § 404.1560(c)(1); *Beltran v. Astrue*, 700 F.3d 386, 390 (9th Cir. 2012) ("if we find *either* of the two numbers significant,' then we must uphold the ALJ's decision") (emphasis in original) (*citing* 42 U.S.C. § 423(d)(2)(A)).

## CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for defendant and the case should be closed.

Dated this 28th day of January, 2016.

J. Richard Creatura
United States Magistrate Judge